

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

June 22, 1977

Honorable Bob Armstrong
General Land Office
Austin, Texas 78701

Opinion No. H- 1017

Re: Whether the School
Land Board may trade for
land pursuant to article
5421c-13 V.T.C.S., and
retain leasing rights.

Dear Mr. Armstrong:

You have requested our opinion regarding the authority
of the School Land Board to retain leasing rights in lands
traded pursuant to article 5421c-13, V.T.C.S. That statute
provides, in section 1(a):

> The School Land Board in conjunction with
> the General Land Office is authorized to
> trade fee and lesser interests in Public
> Free School Fund Lands for fee and lesser
> interests in lands not dedicated to the
> Public Free School Fund upon a decision
> by the School Land Board and the Commis-
> sioner of the General Land Office that
> such trade or trades are in the best public
> interest of the People of Texas. Such trade
> or trades may be made either for the purpose
> of aggregating sufficient acreage of con-
> tiguous lands to create a manageable unit;
> for acquiring lands having unique biological,
> geological, cultural, or recreational value;
> or to create a buffer zone for the enhance-
> ment of already existing public land, facil-
> ities, or amenities. Such trades shall be
> on an appraised value basis (such appraisal
> to be made by appraisers of the General Land
> Office and concurred in by the School Land
> Board, and such appraisal shall be conclu-
> sive proof of the value of the land). The
> trades shall be for land of at least equal
> value. The State of Texas shall retain the
> subsurface mineral rights to oil and gas
> wherever practical and in all events when

there is oil and gas production within fifty
(50) miles of such State land.   Such trades
shall be by a deed to be signed jointly by
the Commissioner of the General Land Office
and the Governor.   Failure of the Governor
to sign such a deed constitutes his veto
of the proposed trade, and the proposed
trade shall not be made.

You ask whether the statute's directive that the state "retain
subsurface mineral rights to oil and gas" includes a reserva-
tion of leasing rights.

Article 5367, et seq., V.T.C.S., the so-called "Relin-
quishment Act," enacted in 1919, conveys to the surface owner
of all public free school lands as an agent of the state "an
undivided fifteen-sixteenths of all oil and gas which has been
undeveloped and the value of the same" on all such lands.
Greene v. Robison, 8 S.W.2d 655 (Tex. 1928).   Its purpose was
"to connect the surface owner more closely and less unprofitably
with the development of the minerals." Norman v. Giles, 219
S.W.2d 678, 681 (Tex. 1949).   The surface owner is authorized
to sell or lease the oil and gas found thereon.   V.T.C.S. art.
5368.

Article 5421c-13, Section 4, however, which was enacted
in 1973, provides that "[a]ll other laws or parts of laws
in conflict with this Act are repealed to the extent of the
conflict."   In our opinion, when the circumstances of article
5421c-13 are applicable, that statute, by requiring the state's
retention of subsurface mineral rights, must be deemed to pre-
vail over the Relinquishment Act in the event of any conflict.
Accordingly, it is our opinion that the reservation to the
State of Texas of subsurface mineral rights in lands traded
pursuant to article 5421c-13 includes a reservation of leasing
rights.

### S U M M A R Y

Article 5421c-13, V.T.C.S., prevails over
conflicting provisions of the Relinquishment
Act, article 5367, et seq., V.T.C.S., and
as a result, the reservation to the State

of Texas of subsurface mineral rights to oil and gas traded pursuant to article 5421c-13 includes a reservation of leasing rights.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee